UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA STEWART, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>APPLIED MATERIALS, INC., et al.,<br><br>　　　　Defendants. | Case No. 15-cv-02632-JST<br><br>**ORDER GRANTING PRELIMINARY CLASS ACTION SETTLEMENT AGREEMENT AND CERTIFYING CLASSES**<br><br>Re: ECF Nos. 48, 49 |

Before the Court are Plaintiff's unopposed motions for certification of settlement classes and preliminary approval of class action settlement. ECF Nos. 48, 49. The Court will conditionally certify the classes and grant the motion for preliminary approval.

## I. BACKGROUND

### A. Factual Background

As described by Plaintiff, "[t]his case concerns Defendant Applied Materials Welfare Benefit Plan's ("defendant" or "the Plan")[1] unreasonable and unlawful denials of coverage for plan participants and beneficiaries with a need for medically necessary speech therapy." ECF No. 44 ¶ 1 ("Second Amended Complaint"). Plaintiff alleges that Defendant breached its fiduciary duties under ERISA, 29 U.S.C. § 1104(A), to "fairly and properly construe and interpret its plans' language for the 'exclusive purpose of providing benefits to participants and beneficiaries' when it denied coverage for speech therapy to individuals with Autism and autism spectrum disorders (ASD)." Id. ¶ 13.

Specifically, Plaintiff alleges that Defendant employed "unlawful plan exclusions" to deny "health care claims totaling many thousands of dollars as well as [to dissuade] parents from

---

[1] Applied Materials, Inc. Welfare Plan is an employee welfare benefit plan regulated by ERISA.

seeking treatment for their children." Id. ¶ 2. The policies in question "violate the Federal Mental Health Policy and Addiction Equity Act ("MHPAE") provisions of ERISA because they constitute separate treatment limitations applicable only with respect to mental health treatment." Id. ¶¶ 2, 62.[2]

Plaintiff Maria Stewart is a covered plan participant under an ERISA-governed plan sponsored by her employer. Id. ¶ 14. Stewart's minor son, Neil, who has autism, is a beneficiary of that plan. Id. "The Plan explicitly provides that short-term speech therapy services to treat autism are a covered benefit." Id. ¶ 29. Neil received speech therapy from 2009-2013, when his "treating provider recommended continued speech therapy . . . despite the fact that [he] was turning six." Id. The Plan limited coverage of speech therapy for Plan beneficiaries age six or older and limited the quantity of visits in excess of 60 visits per calendar year for individuals age five or younger. Id. ¶ 1. In October 2013, therefore, the Plan refused to cover speech therapy services for Neil, and his speech therapy claims for September 2013 were denied. Id. ¶ 15. Aetna Life Insurance issued an Explanation of Benefits stating that "'[s]peech therapy is covered only when it is expected to restore speech function or correct a speech impairment resulting from non-chronic conditions, acute illnesses and injuries, or gross anatomical defect present at birth.'" Id. ¶ 27. Thus, the Plan "limits coverage so narrowly that it is a de facto exclusion of [the] services it claims to provide." Id. ¶ 30-31.

Speech-language pathology services are used to improve communication in those with Autism and autism spectrum disorders (ASD), which are "characterized by speech, language, and communication impairments." Id. ¶¶ 4-5. Clinical evidence and empirical studies have recognized the benefits of speech-language treatment for children and adults with ASD. Id. ¶ 5-7. Plaintiff notes that "[a]s early as 2002, the National Joint Committee for the Communication Needs of Persons with Severe Disabilities found that justification for denial of communication services and supports for persons with severe disabilities is often based erroneously on an

---

[2] The MHPAEA requires that "any group health plan, issued on or after October 1, 2009 and which provides mental health coverage, must ensure that 'the treatment limitations' applicable to mental health coverage 'are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits.'" Id. ¶ 62(a).

2

assertion that chronological age of the individual should restrict provision of communication services to individuals with severe disabilities, because they are either 'too young' or 'too old' to benefit from such services." Id. ¶ 8.  Such reasoning continues to be erroneous, plaintiffs contend, and "[c]urrent research clearly documents the efficacy of communication services and supports provided to all individuals regardless of age and with a variety of severe disabilities." Id.

Plaintiff alleges that "Defendant uses internal clinical guidelines regarding the provision of speech therapy services to restrict access to and deny speech therapy services to individuals over the age of five," and "Defendant places visit limitations for speech therapy, totaling just 60 days per calendar year." Id. ¶¶ 10-11.  The internal guidelines are objectionable because they are based on "*a priori* criteria directly contradict[ing] generally accepted standards of medical practice [as defined in Plaintiff's Plan"[3] that emphasize consideration of individual needs. Id. ¶ 9.  Moreover, the internal guidelines implementing restrictions are "instituted without regard to medical necessity [and] have no support in the literature regarding the provision of speech therapy services to individuals with ASD." Id. ¶ 12.

Plaintiff's second amended complaint alleges a breach of the Employee Retirement Income Security Act of 1974 and requests (1) enforcement and clarification of rights; (2) prejudgment and postjudgment interest; and (3) attorneys' fees and costs. ECF No. 44.  The parties have now reached a Settlement Agreement. ECF No. 49 at 1.  Moreover, "[e]ffective January 1, 2016, Defendant unilaterally amended its Plan to eliminate the following Restrictions: exclusions on all

---

[3] "Plaintiff's Plan covers all 'medically necessary' services which is defined in the Plan as the following:
A necessary service is one that a physician, using prudent clinical judgment, would provide to a patient to prevent, evaluate, diagnose or treat an illness, injury, disease or its symptoms.  It must be:
- Provided according to generally accepted standards of medical practice;
- Clinically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for the patient's illness, injury or disease;
- Not primarily for the convenience of the patient, physical or other health care provider; and
- Not more costly than an alternative service or services that are at least as likely to produce the same therapeutic or diagnostic results for the diagnosis or treatment of the patient's illness, injury or disease.

For the purposes of this definition, 'generally accepted standards of medical practice' means standards based on credible scientific evidence published in peer-reviewed medical literature recognized by the medical community." Id. ¶ 28.

coverage of Speech Therapy for the treatment of Autism for Plan beneficiaries age six or older and limitations on visits in excess of 60 visits per calendar year for individuals age five or younger." Id.

### B.  Procedural Background

Plaintiff filed this class action case on June 12, 2015, on behalf of Neil Stewart, her minor child with ASD, and on behalf of similarly situated individuals. ECF No. 1. The operative Second Amended Complaint ("SAC") was filed on February 12, 2016. ECF No. 44. Plaintiff and Applied Materials engaged in months of negotiations, exchanged initial disclosures and related document productions, proposed offers and counteroffers, and eventually agreed to a settlement in principle on May 18, 2016. ECF No. 46. Plaintiff then filed an unopposed motion for preliminary approval of the settlement, and an unopposed motion for class certification. ECF Nos. 48, 49.

## II.  CLASS CERTIFICATION

### A.  Legal Standard

Class certification under Rule 23 is a two-step process. First, Plaintiff must demonstrate that the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) are met. "One or more members of a class may sue or be sued as representative parties on behalf of all members only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied." Wang v. Chinese Daily News, Inc., 709 F.3d 829, 833 (9th Cir. 2013) (quoting Wal–Mart Stores, Inc. v. Dukes, 546 U.S. 338, 351 (2011)). In addition, "[w]hile it is not an enumerated requirement of Rule 23, courts have recognized that "in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." Vietnam Veterans of Am. v. C.I.A., 288 F.R.D. 192, 211 (N.D. Cal. 2012) (quoting DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970)).

Second, a plaintiff must also establish that one of the bases for certification in Rule 23(b) is

4

met. Here, Plaintiff invokes Rule 23(b)(3), which requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Id.

The party seeking class certification bears the burden of demonstrating by a preponderance of the evidence that all four requirements of Rule 23(a) and at least one of the three requirements under Rule 23(b) are met. See Dukes, 546 U.S. at 350-51.

### B.     Proposed Classes

Plaintiff seeks certification of settlement classes consisting of all individuals who:

> (1) (a) have been participants or beneficiaries in the Plan at any time during the Class Period; (b) . . . while enrolled in the Plan received Speech Therapy to treat ASD during the Class Period and had an Autism diagnosis at the time of that Speech Therapy; and (c) were either age six or older at the time of receipt of that Speech Therapy or were age five or younger and had exceeded 60 Speech Therapy visits in a calendar year; *and* either
>
>> (i) submitted claims for reimbursement of Speech Therapy to the Plan and the Claims Processor denied those claims ("Class One"); or
>>
>> (ii) did not submit a claim to the Plan and were not otherwise reimbursed for the therapy ("Class Two"); or,
>
> (2) are the parents and guardians of the individuals described in Paragraph (1) above; or
>
> (3) are the Successors-in-Interest of the individuals described in Paragraph (1) above.

ECF No. 49 at 2. Plaintiff moves the Court to certify both classes under FRCP 23(b)(3), arguing that they meet all the requirements of FRCP 23(a) and (b)(3). Plaintiff requests that Maria Stewart be appointed as class representative of the settlement classes, with Kantor & Kantor, LLP appointed as class counsel.

**C.     Analysis**

   **1. Rule 23(a) requirements**

   **a.     Numerosity**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members." In re Facebook, Inc., PPC Advertising Litig., 282 F.R.D. 446, 452 (N.D. Cal. 2012).

Here, Plaintiff argues that the proposed class is sufficiently numerous because "Defendants have identified approximately 120 unique Plan participants with a primary or secondary ASD diagnosis during the class period." ECF No. 49 at 4. While Plaintiff does not elaborate on how many of those 120 participants submitted claims for reimbursement of speech therapy that were denied or did not submit a claim and were not otherwise reimbursed, Defendant does not dispute Plaintiff's contentions regarding numerosity. Moreover, while "a class of fifteen was too small," courts have found that classes between fifteen and forty may satisfy numerosity where a Plaintiff "is requesting declaratory and injunctive relief . . . [and it is] in the interests of judicial economy." Escalante v. California Physicians' Service, 309 F.R.D. 612 (C.D. Cal. 2015). Plaintiff has requested such relief here, and the Court finds that allowing a class action would advance the interests of judicial economy. Accordingly, the Court concludes that Plaintiffs have satisfied the numerosity requirement.

   **b.     Commonality**

A Rule 23 class is certifiable only if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[F]or purposes of Rule 23(a)(2) [e]ven a single [common] question will do." Wal-Mart, 131 S. Ct. at 2556 (internal quotation marks omitted). However, the common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. at 2551. "'What matters to class certification . . . is not the raising of common 'questions' – even in droves – but rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.'" Id. (quoting

6

Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131–32 (2009)). Additionally, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" which cannot merely be the suffering of "a violation of the same provision of law." Id. (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 (1982)).

The Court agrees that "[t]his case seeks an answer" to "overarching common questions of law that affect every proposed class member." ECF No. 49 at 6. The common question is whether the Plan's former age-based exclusion of and visit limitations on Speech Therapy to treat ASD, even when medically necessary, violate the federal Mental Health Parity Act. Id. The answer is common, because the policy "is unlawful as to every [member of the proposed classes] or it is not." Parsons v. Ryan, 754 F.3d 657, 678 (9th Cir. 2014). "Although it may turn out that individual class members suffering from [ASD] issues may not be covered after Defendant reviews [that] particular individual's circumstances, this goes beyond the main issue of the case, which challenges Defendant's policy on its face, not Defendant's individualized coverage decisions." Escalante, 309 F.R.D. at 618.

Defendant does not dispute that the proposed class meets the commonality requirement, and the Court finds that Plaintiff has satisfied it.

### c. Typicality

In certifying a class, courts must find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." Parsons, 754 F.3d at 685 (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998)). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the Named Plaintiffs, and whether other class members have been injured by the same course of conduct.'" Id. (quoting Hanlon, 976 F.2d at

508).

"Where the challenged conduct is a policy or practice that affects all class members . . . the typicality inquiry involves comparing the injury asserted in the claims raised by the Named Plaintiffs with those of the rest of the class." Id. (quoting Armstrong v. Davis, 275 F.3d 849, 868-69 (9th Cir. 2001)). Here, the Court has already concluded that Plaintiff challenges a policy which affects the entire class. Determination of whether the Plan-wide policy is unlawful or not "does not require [the Court] to determine the effect of [that policy] upon any individual class member . . . or to undertake any other kind of individualized determination." Parsons, 754 F.3d at 678. The named Plaintiff "bases her claims on the same legal theory as the class: that the federal Mental Health Parity Act required the Plan to provide coverage for medically necessary Speech Therapy to treat ASD without regard to age or number of visits during a calendar year." ECF No. 49 at 7. The Named Plaintiff's son was diagnosed with autism, he required Speech Therapy, and Defendant denied Plaintiff's requests for coverage based on the limitations in Defendant's Plan. The Court concludes that Plaintiff is typical of the proposed class.

### d. Adequacy

"The adequacy of representation requirement . . . requires that two questions be addressed: (a) do the Named Plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the Named Plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 462 (9th Cir. 2000). The requirement "'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a)." Amchem Prods. v. Windsor, 521 U.S. 591, 626 n.20 (1997) (quoting Falcon, 457 U.S. at 158 n.13 (1982)). Among other functions, the requirement serves as a way to determine whether "the Named Plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Falcon, 457 U.S. at 158 n.13.

First, the Court finds no evidence that the interests of Named Plaintiff or her counsel are in any way antithetical to the interests of other class members. See Mayfield v. Dalton 109 F.3d 1423, 1427 (9th Cir. 1997). Defendant does not argue otherwise.

Second, the Named Plaintiff has retained experienced counsel, which has "extensive

8

experience in class actions." ECF No. 49 at 8. Counsel has pledged to "commit adequate resources to the litigation." Id. Nothing in the record suggests, and Defendant does not argue, otherwise. Accordingly, Plaintiff has satisfied the adequacy requirement.

### e. Ascertainability

"[A] class definition is sufficient if the description of the class is 'definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member.'" Vietnam Veterans of Am., 288 F.R.D. at 211 (quoting O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319 (C.D. Cal. 1998)).

The Court concludes that the proposed class is ascertainable because it is defined by objective criteria. Class members were participants or beneficiaries in the Plan, received Speech Therapy to treat diagnosed ASD, and were denied their claims or failed to submit their claims and were not otherwise reimbursed because of the age and visit number restrictions in the Plan. ECF No. 49 at 2.

### 2. Rule 23(b)(3)

A plaintiff seeking certification pursuant to Rule 23(b)(3) must show not only commonality but also predominance. See Hanlon, 150 F.3d at 1022. Thus, in seeking to certify a Rule 23(b)(3) class, the plaintiff must show that the common questions in the case "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." Hanlon, 150 F.3d at 1022 (citing Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed. 1986)). Moreover, "[t]he superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." Hanlon, 150 F.3d at 1023. "[C]ertification pursuant to Rule 23(b)(3) . . . is appropriate whenever the actual interests of the parties can be served best by settling their differences in a single action." Id. at 1022 (quotation omitted).

A common question predominates here, since all class members' claims depend on

whether the Plain's prior exclusions of Speech Therapy violated the federal Mental Health Parity Act. Moreover, settling the case as a class action will allow the class members to obtain retroactive benefits without filing individual lawsuits "or even exhausting their administrative appeals." ECF No. 49 at 10. No class members have any significant interest in pursuing individual litigation, and the Court is unaware of any overlapping litigation concerning the controversy. Fed. R. Civ. P. 23(b)(3)(A)-(B); see also Lilly v. Jamba Juice Co., 308 F.R.D. 231, 241 (N.D. Cal. 2014). The Court is similarly unaware of any undesirable effects of concentrating the class' claims in this forum. Fed. R. Civ. P. 23(b)(3)(C). Moreover, Plaintiff moves for class certification for purposes of settlement. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 620 (1997); see also Fed. R. Civ. P. 23(b)(3)(D). Defendant does not dispute that superiority and predominance have been established. The Court is satisfied that "certification of a settlement class under FRCP 23(b)(3) is superior," and Plaintiff has established predominance. ECF No. 49 at 10.

### D. Appointment of Class Representatives and Class Counsel

Because the Court finds that named Plaintiff Maria Stewart meets the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints her as class representative.

In addition, when a court certifies a class, the court must appoint class counsel and must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

Fed.R.Civ.P. 23(g)(1)(A). Additionally, a court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Id., subsec. (B). Plaintiff's counsel has thus far vigorously prosecuted this action by: (1) filing and amending Plaintiff's complaint; (2) investigating class members' potential claims; (3) engaging in informal

discovery; (4) participating in months of negotiations; and (5) and briefing the instant motions for class certification and preliminary approval. ECF No. 49-1 ("Declaration of Glenn R. Kantor"). In addition, as discussed above, Plaintiffs' counsel has significant prior experience in ERISA and class action litigation. For these reasons, the Court will appoint Kantor & Kantor, LLP, as class counsel pursuant to Federal Rule of Civil Procedure 23(g).

## III. PRELIMINARY APPROVAL

### A. Legal Standard

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). Courts generally employ a two-step process in evaluating a class action settlement. First, courts make a "preliminary determination" concerning the merits of the settlement and, if the class action has settled prior to class certification, the propriety of certifying the class. See Manual for Complex Litigation, Fourth ("MCL, 4th") § 21.632 (FJC 2004). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." City of Seattle, 955 F.2d at 1276. Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 947 (9th Cir. 2011).

The Court's task at the preliminary approval stage is to determine whether the settlement falls "within the range of possible approval." In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (quotation omitted); see also MCL, 4th § 21.632 (explaining that courts "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing."). Second, courts must hold a hearing pursuant to Rule 23(e)(2) to make a final determination of whether the settlement is "fair, reasonable, and adequate."

Preliminary approval of a settlement is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does

11

not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." In re Tableware, 484 F. Supp. 2d at 1079 (quotation omitted). The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class. Hanlon, 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). To assess a settlement proposal, courts must balance a number of factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the state of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Id. at 1026 (citations omitted). The proposed settlement must be "taken as a whole, rather than the individual component parts" in the examination for overall fairness. Id. Courts do not have the ability to "delete, modify, or substitute certain provisions"; the settlement "must stand or fall in its entirety." Id.

Settlements that occur before formal class certification also require a higher standard of fairness. Mego, 213 F.3d at 458. In reviewing such settlements, in addition to considering the above factors, the court must be particularly vigilant that "the settlement is not the product of collusion among the negotiating parties." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946–47 (9th Cir. 2011).

### B. Terms of the Settlement

As described by the Plaintiff, the proposed Settlement Agreement provides "retroactive relief by applying the January 1, 2016 Plan modifications to class members who [were enrolled in the Plan], had speech therapy to treat [ASD], whether submitted to the Plan for coverage or not, prior to January 1, 2016, and who were either age six or older when treatment occurred or were age five or younger and had more than sixty speech therapy visits in a calendar year." ECF No. 49 at 1.

Retroactive relief will encompass both (1) submitted claims for reimbursement of Speech

Therapy to the Plan where the Claims Processor denied those claims ("Class One"); as well as (2) claims which were not originally submitted to the Plan during the Class Period and where beneficiaries were not otherwise reimbursed for the therapy ("Class Two"). ECF No. 48 at 2. "The Plan [] agrees to use reasonable efforts to process any re-request for coverage by any Class Member made pursuant to the Settlement Agreement." Id. at 4. Moreover, class members will "now have comprehensive coverage of Speech Therapy to treat ASDs, and the ability to access that care." Id. at 2.

The Settlement Agreement establishes payment for past claims (whether previously submitted or not) for Speech Therapy, attorneys' fees and costs. Id. The "moneys budgeted for" the settlement "will be sufficient to pay all claims at 100% of the amount the Plan would have paid, had the claims been submitted and approved." Id.

In exchange, class members "will release Applied Materials, the Plan, and their respective assigns, heirs, administrators, executors, and successors-in-interest, affiliates, benefit plans, predecessors, and transferees, and their past and present shareholders, officers, directors, agents, and employees, from any and all Class Released Claims that Named Plaintiff or the Settlement Classes have directly, indirectly, derivatively, or in any other capacity ever had or now have whether known or unknown, supported or unsupported. Named Plaintiff and the Class Members expressly waive and relinquish any and all claims, rights, or benefits that they may have under California Civil Code Section 1542." Id. at 4-5. California Civil Code Section 1542 provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release which if known by him or her must have materially affected his or her settlement with the debtor.

Id. at 5. Class members will receive notice of the Settlement through the mailing of "the [Class Action Fairness Act of 2005] Notice." Id. "Class Members who wish to preserve individualized claims may opt out of the Settlement by sending a written request to the Class Administrator[4] at the address designated in the Class Notice. The Class Administrator will communicate any opt-out

---

[4] The settlement agreement designates Nickerson & Associates LLC, 520 Pike Street, Suite 1200, Seattle, Washington, 98101 as the Class Administrator.

requests to Applied Materials and Class Counsel, who will in turn report them to the Court as part of the Final Approval Hearing. Applied Materials shall bear all notice costs, including the hiring of a Class Administrator, and providing class notice." Id. at 6. Moreover, "Applied Materials has agreed to pay and not object to a motion by Class Counsel for an award of attorneys' fees and expenses in the amount of $70,250 to Class Counsel." Id.

### C. Analysis

#### 1. Risk, Expense, Complexity, and Likely Duration of Further Litigation

While the Plaintiff believes her case was strong and she and the putative class would have prevailed at trial, "[t]he proposed settlement reflects this strong position" by providing for retroactive coverage of Speech Therapy, reimbursement of class members' claims for out-of-pocket expenses related to retrospective benefits, and payment of attorneys' fees and costs. The Court agrees, and finds settlement preferable to continued costly and time-consuming litigation.

#### 2. Absence of Collusion

Because this settlement was reached prior to class certification, the Court must also examine the settlement for evidence of collusion with a higher level of scrutiny. In re Bluetooth, 654 F.3d at 946. In conducting such an examination, courts must be "particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiation." Id. Signs of collusion include: (1) a disproportionate distribution of the settlement fund to counsel; (2) negotiation of a "clear sailing provision"; and (3) an arrangement for funds not awarded to revert to defendant rather than to be added to the settlement fund. Id. at 947. If "multiple indicia of possible implicit collusion" are present, a district court has a special "obligat[ion] to assure itself that the fees awarded in the agreement were not unreasonably high." Id. (citing Staton v. Boeing Co., 327 F.3d 938, 965 (9th Cir. 2003).[5]

The Court has also examined the settlement for any of the three signs of collusion listed in Bluetooth. There is no evidence of either the first sign (a disproportionate distribution of the

---

[5] Plaintiff chose not to address any of the Bluetooth signs in her motion for approval.

14

settlement fund to counsel) or the third (an arrangement for funds not awarded to revert to defendant rather than to be added to the settlement fund).

There is, however, evidence of the second sign, because the parties' agreement contains a "clear sailing" provision. "In general, a clear sailing agreement is one where the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling." In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig., 295 F.R.D. 438, 458 (C.D. Cal. 2014) (quoting Weinberger v. Great Northern Nekoosa Corp., 925 F.2d 518, 520 n. 1 (1st Cir.1991)). The parties' agreement states:

> Applied Materials shall pay Class Counsel $70,520 in recognition of the time and expenses incurred in prosecuting this action. This negotiated amount represents the Parties' good faith estimate of fees incurred and to be incurred through the complete resolution of the Action and shall not be reduced or increased if actual fees incurred or lower or greater than the estimated amount.

Notwithstanding the presence of the clear sailing provision, the Court concludes that the settlement agreement is non-collusive. The settlement was reached after the parties engaged in significant arm's length negotiations, facilitated by "the sharing of information through an informal discovery process." ECF No. 48 at 10; see also In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) ("[F]ormal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." (citations omitted)). Moreover, class counsel is experienced and competent in ERISA litigation and class actions. ECF No. 48 at 10. These assertions support the conclusion that the settlement is non-collusive and likely to benefit the class members. See, e.g., Harris v. Vector Marketing Corp., No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). Most importantly, it appears that Plaintiff's counsel has obtained through settlement virtually all of the relief he could have obtained at trial. This fact rebuts any suggestion that the clear sailing clause was obtained at the expense of the plaintiff class, particularly given that victory at trial is never a foregone conclusion. See Toys R Us, 295 F.R.D. at 458 ("Here, despite the clear sailing provision, the class stands to receive a monetary award greater than it might have received had the case proceeded to trial.")

### 3. Obvious Deficiencies

The settlement has no obvious deficiencies. The settlement addresses Plaintiff's and the class's central claim by providing that class members will be afforded retroactive access to claim benefits for Speech Therapy and to ongoing coverage as well. ECF No. 48 at 8-9. As previously noted, this relief represents virtually the entirety of the relief requested in the complaint. The Court concludes that such relief falls within the range of possible approval.

### 4. Preferential Treatment

Under this factor, the Court looks at whether the settlement agreement provides preferential treatment to any class member. The Named Plaintiff will receive the same relief as all other class members under the agreement. The different sub-classes reflect only that class members may be included either based on the age restriction or the number of visits, and all class members are awarded the same benefits. The Court is not aware of any preferential treatment to any class member.

### 5. Notice Procedure

The class notice in a Rule 23(b)(3) class action must comport with the requirements of due process. "The plaintiff must receive notice plus an opportunity to be heard and participate in litigation, whether in person or through counsel." Philips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985). The notice must be "the best practicable," "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Id. (citations omitted). "The notice should describe the action and the plaintiffs' rights in it." Id. Rule 23(c)(2)(B) provides, in relevant part:

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Additionally, "an absent plaintiff [must] be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court." Id.

As stated above, the parties propose to use Nickerson & Associates LLC as the Class

16

1    Administrator for the class. ECF No. 48, Appendix 1 at 2. Within thirty days of preliminary
2    approval, the settlement agreement requires Defendant to transmit a list of the names and
3    addresses of Class Notice Recipients located after a reasonable search for such information
4    directly to the Class Administrator. Id. at 4. Then, "[b]y the date and in the manner set by the
5    Court in its Preliminary Approval Order, the Class Administrator shall have caused the Court-
6    approved Class Notice to be delivered to the Class Notice Recipients in the form and manner
7    approved by the Court." Id. The notice packet will contain a claim form and a notice form, which
8    provides information regarding the claims asserted, the settlement, how to file a claim or opt-out
9    of or objection to the settlement, and the final approval hearing. Id., Appendix 2-3. Claim Forms
10   will be mailed to Defendant/Claims Processor. Id., Appendix 3.

11   The notice form sent to class members states: the nature of this action; the definition of the
12   class; the class claims and issues; that a class member may enter an appearance through an
13   attorney if he or she so desires; that the Court will exclude from the class any member who
14   requests exclusion; the time and manner for requesting exclusion or objecting to the settlement;
15   the effect of requesting exclusion, objecting to the settlement, or doing nothing in response to the
16   notice; and the binding effect of a class judgment on class members. Id., Appendix 1-3. It also
17   provides contact information for the Class Administrator, class counsel, and the Claims Processor,
18   and the date of the final approval hearing as currently set. Id.

19   The proposed claim form identifies the case, provides the Claim Processor's mailing
20   address, and instructs class members to submit all claims in one mailing, including the claimant's
21   name, the name of the person who received speech therapy, the DSM diagnosis of the person who
22   received speech therapy, when and by whom that diagnosis was made, a current address, a phone
23   number, an identification number from the address label on the envelope of the notice received,
24   the date(s) of speech therapy (at least month and year), the provider name and contact information,
25   if available, a description of the service received, the diagnosis of the condition treated, and the
26   amount the claimant paid or owes for the services. Id., Appendix 3. The claim form also requires
27   claimants to attach some proof of the speech therapy service, and explains that an investigation
28   may be made to confirm any claim. Id.

17

To opt-out of the settlement, putative class members must send a signed, written request to the Class Administrator by an as-yet unspecified date. Id., Appendix 2. To object to the settlement, class members must submit, in writing, comments, objections, or support of the proposed agreement to the Claims Processor. Id.

The Court finds the parties' notice plan comports with due process requirements. See also Fed. R. Civ. P. 23(c)(2) ("For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through a reasonable effort."). The proposed notice is, for the most part, in compliance with the Northern District's Procedural Guidance for Class Action Settlements, which is available at http://www.cand.uscourts.gov/ClassActionSettlementGuidance. The claim form indicates that putative class members may find further information on a website maintained by class counsel. Id. The parties are ordered to amend the "Objections" section of the Notice, however, by addition of the following language:

> You can ask the Court to deny approval by filing an objection. You can't ask the Court to order a larger or different settlement; the Court can only approve or deny the settlement. If the Court denies approval, no relief will be awarded to the class and the lawsuit will continue. If that is what you want to happen, you must object.
>
> You may object to the proposed settlement in writing. You may also appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for paying that attorney. All written objections and supporting papers must (a) clearly identify the case name and number (Stewart v. Applied Materials, Case Number 3:15-cv-02632-JST), (b) be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, by filing them in person at any location of the United States District Court for the Northern District of California, or by mailing them to the Claims Processor at the address listed below, and (c) be filed or postmarked on or before _____.

In addition, the Court reminds the parties that when notice is mailed, "[t]he envelope should be designed to enhance the chance that it will be opened. Notice should be supplemented by email notice if feasible." Id. Accordingly, the Court grants preliminary approval of the settlement.

## CONCLUSION

For the foregoing reasons, the Court hereby:

1. Grants preliminary approval of the settlement;

2. Conditionally certifies the proposed settlement classes;

3. Approves the proposed notice program, and the content of the notices;

4. Approves and orders that the proposed opt-out and objection procedures be undertaken;

5. Appoints Maria Stewart as class representative and Kantor & Kantor, LLP as class counsel;

6. Appoints Nickerson & Associates LLC as the Class Administrator.

7. Sets the final approval hearing for July 13, 2017 at 2:00 p.m. Within thirty days of the date of this order, Defendant shall provide Nickerson & Associates LLC the names and contact information of class members. Within ten days of Nickerson's receipt of this information, Nickerson shall mail notice packets to all class members. Class members shall have sixty days from the date of this mailing to file a claim form, request exclusion, or object to the settlement. Plaintiff shall file her motion for final approval of the settlement, and the application for attorneys' fees, costs, expenses, and service awards, no later than May 26, 2017.

Counsel are reminded that any application for attorneys' fees must be supported by contemporaneous time records, which should be totaled and summarized by month, and that any application for expenses must be supported by itemized invoices.

IT IS SO ORDERED.

Dated: February 6, 2017

JON S. TIGAR
United States District Judge