UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA STEWART, et al., <br><br> Plaintiffs, <br><br> v. <br><br> APPLIED MATERIALS, INC., et al., <br><br> Defendants. | Case No. 15-cv-02632-JST <br><br> **ORDER GRANTING FINAL APPROVAL OF CERTIFICATION OF SETTLEMENT CLASSES, CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES** <br><br> Re: ECF Nos. 57, 58 |

Before the Court are Plaintiffs' Unopposed Motion for Final Approval of Certification of Settlement Classes, Final Approval of Class Action Settlement, and Plaintiffs' Motion for Attorneys' Fees. ECF Nos. 57, 58. The Court will grant the motions.

## I. BACKGROUND

### A. Factual Background

As described by Plaintiff, "[t]his case concerns Defendant Applied Materials Welfare Benefit Plan's ("defendant" or "the Plan")[1] unreasonable and unlawful denials of coverage for plan participants and beneficiaries with a need for medically necessary speech therapy." ECF No. 44 ¶ 1 ("Second Amended Complaint"). Plaintiff alleges that Defendant breached its fiduciary duties under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1104(A), to "fairly and properly construe and interpret its plans' language for the 'exclusive purpose of providing benefits to participants and beneficiaries' when it denied coverage for speech therapy to individuals with Autism and autism spectrum disorders (ASD)." Id. ¶ 13.

Specifically, Plaintiff alleges that Defendant employed "unlawful plan exclusions" to deny

---

[1] Applied Materials, Inc. Welfare Plan is an employee welfare benefit plan regulated by ERISA.

"health care claims totaling many thousands of dollars as well as [to dissuade] parents from seeking treatment for their children." Id. ¶ 2. The policies in question "violate the Federal Mental Health Policy and Addiction Equity Act ("MHPAE") provisions of ERISA because they constitute separate treatment limitations applicable only with respect to mental health treatment." Id. ¶¶ 2, 62.[2]

Plaintiff Maria Stewart is a covered plan participant under an ERISA-governed plan sponsored by her employer. Id. ¶ 14. Stewart's minor son, Neil, who has autism, is a beneficiary of that plan. Id. "The Plan explicitly provides that short-term speech therapy services to treat autism are a covered benefit." Id. ¶ 29. Neil received speech therapy from 2009-2013, when his "treating provider recommended continued speech therapy . . . despite the fact that [he] was turning six." Id. The Plan limited coverage of speech therapy for Plan beneficiaries age six or older and limited the quantity of visits in excess of 60 visits per calendar year for individuals age five or younger. Id. ¶ 1. In October 2013, therefore, the Plan refused to cover speech therapy services for Neil, and his speech therapy claims for September 2013 were denied. Id. ¶ 15. Aetna Life Insurance issued an Explanation of Benefits stating that "'[s]peech therapy is covered only when it is expected to restore speech function or correct a speech impairment resulting from non-chronic conditions, acute illnesses and injuries, or gross anatomical defect present at birth.'" Id. ¶ 27. Thus, the Plan "limits coverage so narrowly that it is a de facto exclusion of [the] services it claims to provide." Id. ¶ 30-31.

Speech-language pathology services are used to improve communication in those with Autism and autism spectrum disorders (ASD), which are "characterized by speech, language, and communication impairments." Id. ¶¶ 4-5. Clinical evidence and empirical studies have recognized the benefits of speech-language treatment for children and adults with ASD. Id. ¶ 5-7. Plaintiff notes that "[a]s early as 2002, the National Joint Committee for the Communication Needs of Persons with Severe Disabilities found that justification for denial of communication

---

[2] The MHPAEA requires that "any group health plan, issued on or after October 1, 2009 and which provides mental health coverage, must ensure that 'the treatment limitations' applicable to mental health coverage 'are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits.'" Id. ¶ 62(a).

2

services and supports for persons with severe disabilities is often based erroneously on an assertion that chronological age of the individual should restrict provision of communication services to individuals with severe disabilities, because they are either 'too young' or 'too old' to benefit from such services." Id. ¶ 8. Such reasoning continues to be erroneous, plaintiffs contend, and "[c]urrent research clearly documents the efficacy of communication services and supports provided to all individuals regardless of age and with a variety of severe disabilities." Id.

Plaintiff alleges that "Defendant uses internal clinical guidelines regarding the provision of speech therapy services to restrict access to and deny speech therapy services to individuals over the age of five," and "Defendant places visit limitations for speech therapy, totaling just 60 days per calendar year." Id. ¶¶ 10-11. The internal guidelines are objectionable because they are based on "*a priori* criteria directly contradict[ing] generally accepted standards of medical practice [as defined in Plaintiffs' Plan"[3] that emphasize consideration of individual needs. Id. ¶ 9. Moreover, the internal guidelines implementing restrictions are "instituted without regard to medical necessity [and] have no support in the literature regarding the provision of speech therapy services to individuals with ASD." Id. ¶ 12.

Plaintiffs' second amended complaint alleges a breach of the Employee Retirement Income Security Act of 1974 and requests (1) enforcement and clarification of rights; (2) prejudgment and

---

[3] "Plaintiffs' Plan covers all 'medically necessary' services which is defined in the Plan as the following:

"A necessary service is one that a physician, using prudent clinical judgment, would provide to a patient to prevent, evaluate, diagnose or treat an illness, injury, disease or its symptoms. It must be:

- Provided according to generally accepted standards of medical practice;
- Clinically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for the patient's illness, injury or disease;
- Not primarily for the convenience of the patient, physical or other health care provider; and
- Not more costly than an alternative service or services that are at least as likely to produce the same therapeutic or diagnostic results for the diagnosis or treatment of the patient's illness, injury or disease.

"For the purposes of this definition, 'generally accepted standards of medical practice' means standards based on credible scientific evidence published in peer-reviewed medical literature recognized by the medical community." Id. ¶ 28.

1 postjudgment interest; and (3) attorneys' fees and costs. ECF No. 44. The parties have now

2 reached a Settlement Agreement. ECF No. 49 at 1. Moreover, "[e]ffective January 1, 2016,

3 Defendant unilaterally amended its Plan to eliminate the following Restrictions: exclusions on all

4 coverage of Speech Therapy for the treatment of Autism for Plan beneficiaries age six or older and

5 limitations on visits in excess of 60 visits per calendar year for individuals age five or younger."

6 Id.

### B. Procedural Background

Plaintiff filed this class action on June 12, 2015, on behalf of Neil Stewart, her minor child with ASD, and on behalf of similarly situated individuals. ECF No. 1. The operative Second Amended Complaint ("SAC") was filed on February 12, 2016. ECF No. 44. Plaintiff and Applied Materials engaged in months of negotiations, exchanged initial disclosures and related document productions, proposed offers and counteroffers, and eventually agreed to a settlement in principle on May 18, 2016. ECF No. 46. Plaintiff then filed an unopposed motion for preliminary approval of the settlement, and an unopposed motion for class certification. ECF Nos. 48, 49. On February 6, 2017, the Court certified the classes and granted preliminary approval of the Class Action Settlement Agreement. ECF No. 53 at 19. On March 17, 2017, Nickerson and Associates LLC — the claims administrator ("Administrator") — completed the mailing of Class Notices and Claim Form Material. ECF No. 54. On June 9, 2017, Plaintiff filed an unopposed motion for Final Approval of Certification of Settlement Classes and Class Action Settlement, and a motion for attorneys' fees. ECF Nos. 57, 58.

### C. Terms of the Agreement

As described by the Plaintiff, the Settlement Agreement provides "retroactive relief by applying the January 1, 2016 Plan modifications to class members who [were enrolled in the Plan], had speech therapy to treat [ASD], whether submitted to the Plan for coverage or not, prior to January 1, 2016, and who were either age six or older when treatment occurred or were age five or younger and had more than sixty speech therapy visits in a calendar year." ECF No. 49 at 1.

Retroactive relief will encompass both (1) submitted claims for reimbursement of Speech Therapy to the Plan where the Claims Processor denied those claims ("Class One"); as well as (2)

4

claims which were not originally submitted to the Plan during the Class Period and where beneficiaries were not otherwise reimbursed for the therapy ("Class Two"). ECF No. 48 at 2. "The Plan [] agrees to use reasonable efforts to process any re-request for coverage by any Class Member made pursuant to the Settlement Agreement." Id. at 4. Moreover, class members will "now have comprehensive coverage of Speech Therapy to treat ASDs, and the ability to access that care." Id. at 2.

The Settlement Agreement establishes payment for past claims (whether previously submitted or not) for Speech Therapy, attorneys' fees and costs. Id. The "moneys budgeted for" the settlement "will be sufficient to pay all claims at 100% of the amount the Plan would have paid, had the claims been submitted and approved." Id. In exchange, class members "will release Applied Materials, the Plan, and their respective assigns, heirs, administrators, executors, and successors-in-interest, affiliates, benefit plans, predecessors, and transferees, and their past and present shareholders, officers, directors, agents, and employees, from any and all Class Released Claims that Named Plaintiff or the Settlement Classes have directly, indirectly, derivatively, or in any other capacity ever had or now have whether known or unknown, supported or unsupported. Named Plaintiff and the Class Members expressly waive and relinquish any and all claims, rights, or benefits that they may have under California Civil Code Section 1542." Id. at 4-5. California Civil Code Section 1542 provides: A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release which if known by him or her must have materially affected his or her settlement with the debtor. Id. at 5. Class members received notice of the Settlement through the mailing of "the [Class Action Fairness Act of 2005] Notice." Id. Applied Materials shall bear all notice costs, including the hiring of a Class Administrator, and providing class notice." Id. at 6. Moreover, "Applied Materials has agreed to pay and not object to a motion by Class Counsel for an award of attorneys' fees and expenses in the amount of $70,250 to Class Counsel." Id.

D. **Settlement Classes**

The Court also conditionally certified the following settlement classes:

> (1) (a) [Individuals who] have been participants or beneficiaries in the Plan at any time during the Class Period; (b) who while enrolled in the Plan received Speech Therapy to treat Autism during the Class Period and had an Autism diagnosis at the time of that Speech Therapy; and (c) were either age six or older at the time of receipt of that Speech Therapy or were age five or younger and had exceeded 60 Speech Therapy visits in a calendar year; *and* either
>
>   i. submitted claims for reimbursement of Speech Therapy to the Plan and the Claims Processor denied those claims ("Class One"); *or*
>
>   ii. did not submit a claim to the Plan and were not otherwise reimbursed for the therapy ("Class Two");
>
> or,
>
> (2) [Individuals who] are the parents and guardians of the individuals described in Paragraph (1) above; or
>
> (3) [Individuals who] are the Successors-in-Interest of the individuals described in Paragraph (1) above.

ECF No. 57 at 28, ¶ 1.17.

## II. FINAL APPROVAL OF SETTLEMENT AGREEMENT

In line with its previous order granting preliminary approval, the Court now concludes that the proposed settlement is fair, adequate, and reasonable.

### E. Legal Standard

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." Hanlon v. Chrysler Corp., 150 F. 3d 1011, 1025 (9th Cir. 1998). In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Id. at 1026. In order to assess a settlement proposal, a District Court must balance a number of factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

Churchill Vill., L.L.C. v. Gen. Elec., 361 F. 3d 566, 575 (9th Cir. 2004).[4] Settlements that occur before formal class certification also "require a higher standard of fairness." In re Mego Fin. Corp. Sec. Litig., 213 F. 3d 454, 458 (9th Cir. 2000). In reviewing such settlements, in addition to considering the above factors, the court also must ensure that "the settlement is not the product of collusion among the negotiating parties." In re Bluetooth Headset Prods. Liab. Litig., 654 F. 3d 935, 946–47 (9th Cir. 2011).

### F. Analysis

#### 1. Adequacy of Notice

"The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco, 688 F. 2d 615, 624 (9th Cir. 1982) (citation omitted). The Court has previously approved the parties' proposed notice procedures. ECF No. 53 at 19. In her motion for final approval, Plaintiff states that the parties have carried out this notice plan. The Administrator mailed the "[c]lass [n]otices and [c]laim [f]orm materials . . . to all 137" class members on the class list. ECF No. 57, ¶ 4. All materials "were mailed in accordance with the class notice procedures included in the February 6, 2017 Court Order." Id.; Declaration of Peter Nickerson (Nickerson Decl.), ECF No. 57-3, ¶ 2. The Administrator received six returned letters and made another public search to update the class participants' addresses. Id. The Administrator then resent the notices. Id.; Nickerson Decl. ¶ 3. Two of the six letters were returned as "unclaimed," and the identity of the two class members with unclaimed notices was provided to Defendants' Counsel on June 5th, 2017. Id. Defendants are researching whether the class members have an updated address or e-mail address. Id. Assuming that Defendants find an address, the Administrator will resend the claim materials and provide the class members with an additional two-week period to send a response. Id. One class member communicated that they did not have access to their mail during the time period of the mail-out, so the claims administrator resent the claim materials and provided the class member with an additional two-week period, beginning

---

[4] There is no governmental participant in this case, so the Court need not consider this factor.

7

May 24, 2017, to respond. Id.; Nickerson Decl. ¶ 4. The Administrator "received no opt-outs, objections or comments on the proposed settlement agreement." Id.; Nickerson Decl. ¶ 5.

In light of these actions, and the Court's prior order granting preliminary approval, the Court finds the parties have sufficiently provided notice to the settlement class members. See Lundell v. Dell, Inc., Case No. 05–3970 JWRS, 2006 WL 3507938, at *1 (N.D. Cal. Dec. 5, 2006) (holding that notice sent via email and first class mail constituted the "best practicable notice" and satisfied due process requirements).

### 2. Fairness, Adequacy, and Reasonableness

#### a. Strength of Plaintiffs' Case and Risk of Continuing Litigation

Approval of a class settlement is appropriate when "there are significant barriers plaintiffs must overcome in making their case." Chun–Hoon v. McKee Foods Corp., 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Similarly, difficulties and risks in litigating weigh in favor of approving a class settlement. See Rodriguez v. W. Publ'g Corp., 563 F. 3d 948, 966 (9th Cir. 2009).

Here, Plaintiff believes her case was strong and that she and the putative class would have prevailed at trial. "The proposed settlement reflects this strong position by provid[ing] for retroactive coverage of [s]peech [t]herapy, reimbursement of class members' claims for out-of-pocket expenses related to retrospective benefits pursuant to the Plan, and payment of attorneys' fees and costs . . ." ECF No. 57 at 22. The Court finds that absent settlement, additional time would be spent conducting further discovery and briefing dispositive motions. Further delay exposes class members to the risk of not receiving adequate speech therapy or urgent relief. This settlement minimizes that risk by allowing class members to receive those benefits and accomplishes this "within a year of filing the original action." Id. Although Plaintiffs' Counsel asserts she has a strong case, the Court finds settlement preferable to a delay in medical coverage and the continued costs and uncertainties of continued litigation. The Court concludes this factor weighs in favor of approval.

#### b. Settlement Amount

"In assessing the consideration obtained by the class members in a class action settlement, 'it is the complete package taken as a whole, rather than the individual component parts, that must

8

be examined for overall fairness.'" Nat'l Rural Telecomms. Cooperative v. DIRECTV, Inc., 221 F.R.D. 523, 527 (C.D. Cal. 2004) (quoting Officers for Justice v. Civil Service Comm'n of the City and Cnty. of San Francisco, 688 F. 2d 615, 628 (9th Cir. 1982)). "In this regard, it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." Id. (citing Linney v. Cellular Alaska Partnership, 151 F.3d 1234, 1242 (9th Cir. 1998)).

In this case, the Court has already preliminarily approved the agreement to pay class members' "[s]peech [t]herapy benefits to treat ASD in the amount that would have been approved under the terms of the Plan at the time [of denial], had the Plan not had age and visit limitations[.]" ECF No. 57 at 22. Because this agreement appears to provide class members with all the benefits they would have received had the Plan not denied them coverage on the basis of age or their number of visits, this factor weighs in favor of the settlement.

The Court also notes that the settlement agreement provides that "[a]pplied Materials shall pay Class Counsel $70,520 in recognition of time and expenses incurred in prosecuting this action." ECF No. 57 at 22. The settlement reflects that "[t]his negotiated amount . . . shall not be reduced or increased if actual fees incurred are lower or greater than the estimated amount." Id. The Court previously noted this as a "clear sailing" provision. See ECF No. 53 at 15. Notwithstanding the presence of the clear sailing provision, however, the Court concludes that the settlement is non-collusive.[5] The amount of fees is reasonable in view of the size and complexity of the action, and does not appear to have diminished, or encouraged Plaintiffs' counsel to reduce, what is a substantial settlement for the class.

In conclusion, because this agreement would provide for all the benefits that class

---

[5] Because this settlement was reached prior to certification of the class, the Court must examine the settlement for evidence of collusion or conflicts of interest with a higher level of scrutiny. In re Bluetooth, 654 F.3d at 946. In conducting such an examination, courts must be "particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." Id. Signs of collusion include, but are not limited to: (1) a disproportionate distribution of the settlement fund to counsel; (2) negotiation of a "clear sailing provision"; and (3) an arrangement for funds not awarded to revert to defendants rather than to be added to the settlement fund. Id. at 947. There are no signs of factors (1) or (3).

members were denied, and finding no evidence of collusion, this factor weighs in favor of final approval.

### c. Extent of Discovery

"In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." In re Mego Fin. Corp. Sec. Litig., 213 F. 3d 454, 459 (9th Cir. 2000) (citation omitted).

The Court finds the parties engaged in sufficient discovery and possessed sufficient information to make an informed decision. Plaintiff reached a settlement after the parties engaged in significant arm's length negotiations, facilitated by "the sharing of information through an informal discovery process." ECF No. 48 at 10; ECF No. 57 at 23. The Court is persuaded that the parties conducted sufficient discovery to make an informed decision about the adequacy of the settlement. See In re Omnivision, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2007) (finding the parties were sufficiently informed about the case prior to settling because they engaged in discovery, took depositions, briefed motions, and participated in mediation). This factor therefore weighs in favor of approval.

### d. Counsel's Experience

Plaintiffs' counsel recommends the Court approve the settlement.[6] "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." Id. at 1043. Here, Plaintiffs' Counsel has demonstrated experience in litigating class action cases, and is informed about the claims, defenses, and applicable laws governing Plaintiffs' claims. See Declaration of Glenn R. Kantor in Support of Motion for Settlement Class Action Certification. ECF No. 57 at 17; ECF No. 57-1, ¶¶ 9-14. No party has provided the Court any evidence to contradict this finding. Moreover, Plaintiffs' counsel has handled "no fewer than 1,500 ERISA litigation

---

[6] The Court considers this factor, as it must, but gives it little weight. "Although a court might give weight to the fact that counsel for the class or the defendant favors the settlement, the court should keep in mind that the lawyers who negotiated the settlement will rarely offer anything less than a strong, favorable endorsement." Principles of the Law of Aggregate Litigation § 3.05 comment a (2010).

10

matters." ECF No. 57-1, ¶ 11. Accordingly, Plaintiffs' Counsel's endorsement weighs in favor of approving the settlement. See In re Omnivision, 559 F. Supp. 2d at 1043 (finding class counsel's recommendation in favor of settlement presumptively reasonable because counsel demonstrated knowledge about the case and securities litigation in general).

### e. Reaction of the Class

Finally, class members' positive reaction to a settlement weighs in favor of settlement approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." In re Omnivision, 559 F. Supp. 2d at 1043 (citation omitted).

None of the 137 individual class members have opposed the settlement. As of June 9, 2017, two claim notices were mailed and returned unclaimed. ECF No. 57 at 11; Nickerson Decl. ¶3. The Defendant is currently researching "whether there is an updated address or email address for [those two] class members," and if it finds such an address, the Administrator will send the notices to the two class members. ECF No. 57 at 12; Nickerson Decl. ¶ 3. As of June 9, 2017, the Administrator had received no opt-outs, objections or comments on the proposed settlement agreement. ECF No. 57 at 12; Nickerson Decl. ¶ 5. Accordingly, the Court concludes this factor weighs in favor of a settlement. See e.g., Chun-Hoon v. McKee Foods Corp., 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (finding that 4.86% opt-out rate strongly supported approval).

After reviewing these factors, the Court finds the settlement fair, reasonable, and adequate, and grants Plaintiffs' motion for final approval of the settlement.

## III. ATTORNEYS' FEES

### A. Legal Standard

ERISA provides that "[a] court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C § 1132(g)(1). In discussing ERISA fee awards, the Ninth Circuit has held that ERISA "should be liberally construed in favor of protecting participants in employee benefits plans." Smith v. CMTA-IAM Pension Trust, 746 F.2d 587, 589 (9th Cir. 1984); accord, e.g., McElwaine v. US W., Inc., 176 F.3d 1167, 1172 (9th Cir. 1999). Section 1132(g)(1) should thus be "read broadly to mean that a plan participant or beneficiary, if

11

he prevails in his suit under § 1132 to enforce his rights under his plan, 'should ordinarily recover attorney's fees unless special circumstances would render such an award unjust.'" Smith, 746 F. 2d at 589 (quoting Landro v. Glendenning Motorways, Inc., 625 F. 2d 1344, 1356 (8th Cir. 1980)) (quoting in turn Newman v. Piggie Park Enters., 390 U.S. 400, 402 (1968)).

Before a court can award fees under § 1132(g)(1), however, it must first determine that the plaintiff has achieved "some success on the merits." Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 252–55 (2010). This must be more than a "trivial success on the merits" or a "purely procedural victor[y]," but if the court can "fairly call the outcome of the litigation some success on the merits," it need not conduct a "lengthy inquir[y]" into whether that success was "substantial" or "occurred on a 'central issue.'" Id. at 255 (quoting Ruckelshaus v. Sierra Club, 463 U.S. 680, 688 n.9 (1983)).

The Court then turns to the five factors set out in Hummell v. S.E. Rykoff & Co., 634 F. 2d 446, 452–53 (9th Cir. 1980). E.g., Smith, 746 F.2d at 589–90. The five Hummell factors are:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting in similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

Smith, 746 F.2d at 590 (citing Hummell, 634 F.2d at 453). "No one of the Hummell factors . . . is necessarily decisive, and some may not be pertinent in a given case." Smith, 746 F. 2d at 590 (quoting Carpenters S. Cal. Admin. Corp. v. Russell, 726 F. 2d 1410, 1416 (9th Cir. 1984)).[7]

---

[7] While courts have applied Hummel to class actions when the plaintiffs' entitlement to fees was contested, see Lehman v. Nelson, No. C13-1835RSM, 2015 WL 11233094, at *1 (W.D. Wash. Aug. 4, 2015), on reconsideration in part, No. C13-1835RSM, 2015 WL 5010567 (W.D. Wash. Aug. 21, 2015), the Court is aware of no case suggesting that the application of Hummel is required when a defendant has agreed to pay attorneys' fees as part of a class settlement. The Court also notes that no class member has objected to the proposed fee award, which also has no impact on the relief the class will receive.

Nonetheless, because the proposed fee award is based on section 1132(g)(1), and in satisfaction of the Court's obligation to scrutinize attorneys' fees in all class actions, the Court applies the Hummel factors here. See Staton v. Boeing Co., 327 F.3d 938, 964 (9th Cir. 2003) ("That the defendant in form agrees to pay the fees independently of any monetary award or injunctive relief provided to the class in the agreement does not detract from the need carefully to scrutinize the fee award . . . . 'In a class action, whether the attorneys' fees come from a common fund *or are*

**B. Analysis**

As a threshold matter, there is no doubt that Plaintiffs' counsel "achieved some success on the merits," see Hardt, 560 U.S. at 254–55, given that Plaintiffs' counsel has obtained through settlement virtually all of the relief he could have obtained at trial. Plaintiffs' counsel satisfies the initial "success on the merits" requirement.

### a. Culpability or Bad Faith

The Court thus turns to the Hummell factors. In applying these, the Court "must keep at the forefront ERISA's remedial purposes that 'should be liberally construed in favor of protecting participants in [] benefit plans.'" McElwaine, 176 F.3d at 1172 (quoting Smith, 746 F. 2d at 589).

The first Hummell factor considers the "degree of the [defendants'] culpability or bad faith." Hummell, 634 F.2d at 453; Smith, 746 F. 2d at 590. This Court has seen no evidence of bad faith on the part of the Defendant. "Under Ninth Circuit precedent, . . . the [c]ourt cannot presume bad faith simply because an insurance provider denied benefits under a plan." Rangel v. Aetna Life Ins. Co., 2016 WL 1449539, *2 (N.D. Cal. Apr. 12, 2016) (citing *Smith*, 746 F. 2d at 590). That said, "[t]he Hummell factors reflect a balancing and [a court] need not find that each factor weighs in support of fees." McElwaine, 176 F. 3d at 1173. In particular, "bad faith is not a prerequisite to an ERISA fee award." Id. (citing Smith, 746 F. 2d at 590).

### b. Ability to Pay

The Hummell test next considers "the ability of the opposing parties to satisfy an award of fees." Smith, 746 F. 2d at 490. Neither party has proffered evidence on this point and, given that Defendants have agreed to play Plaintiffs' attorneys' fees, the Court concludes that this factor weighs in favor of approving an award of fees. Moreover, "[g]enerally, when an employee participant brings suit under ERISA, whether it is against the trustees or the employer, the resources available to the pensioner are limited." Smith, 746 F. 2d at 590. "Not to award fees" in such a case would make "the grant of federal jurisdiction" a "gesture" that "few [plaintiffs] could

---

*otherwise paid,* the district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper." (quoting Zucker v. Occidental Petroleum Corp., 192 F.3d 1323, 1328 (9th Cir. 1999) (emphasis added)).

13

avail themselves of" and would "frustrat[e]" ERISA's "basic purpose." Id. (quoting Hall v. Cole, 412 U.S. 1, 13 (1973)). "Based on this [ability-to-pay] factor alone," consequently, "absent special circumstances, a prevailing ERISA employee plaintiff should ordinarily receive attorney's fees from the defendant." Smith, 746 F.2d at 590.

### c. Deterrence

"The next factor considers whether awarding fees in this matter will deter other employers from denying meritorious benefit claims in similar circumstances." Rangel, 2016 WL 1449539 at *2; see, e.g., Smith, 746 F. 2d at 490. The Court concludes that an award of fees, particularly combined with Defendant's change in practice, will have a deterrent effect. Therefore, the Court finds that this factor weighs in favor of awarding attorneys' fees.

### d. Benefiting other parties

The fourth Hummell factor asks whether Plaintiff "sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA." Smith, 746 F. 2d at 590. The parties do not suggest that this case involved a significant question under ERISA, so this consideration weighs only the question of whether the Plaintiff sought to, or did, benefit others.

There seems to be no dispute that the Plaintiff brought this suit to benefit others. Here, as Plaintiff correctly argues, benefit to others was the "underlying pursuit of bringing a Class Action Lawsuit." ECF No. 58-1 at 9. The Court finds that this factor weighs in favor of awarding attorneys' fees.

### e. Relative merits of parties' positions

"The fifth Hummell factor, the relative merits of the parties' positions, is, in the final analysis, the result obtained by the plaintiff." Smith, 746 F. 2d at 590. In applying this factor, the Court does not expect a plaintiff to score an unqualified triumph. Instead, in discussing this factor, the Ninth Circuit has said:

> [T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. [Citation omitted]. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The

14

result is what matters.

Smith, 746 F. 2d at 590–91 (quoting Hensley, 461 U.S. at 435). Thus, even a settlement that brings a plaintiff "a portion of what he brought suit to recover" can be enough to carry a claimant across the "'statutory threshold' entitling him to recover fees from the defendant." Smith, 746 F. 2d at 591 (quoting Hensley, 461 U.S. at 433); see Rangel, 2016 WL 1449539 at *3 (where settlement yielded "some portion" of what plaintiff sought, court "weighs this factor in favor awarding attorney's fees").

Since "it appears that Plaintiffs' counsel has obtained through settlement virtually all of the relief he could have obtained at trial," and "Plaintiff has accomplished the goal of having Defendant provide benefits for [s]peech [t]herapy to treat individuals with . . . ASD . . . who were or might have been previously denied such benefits," this factor is clearly met. ECF No. 53 at 15; ECF No. 58-1 at 9.

In sum, particularly given the Ninth Circuit's admonition that successful ERISA plaintiffs "should ordinarily recover attorney's fees," this Court concludes that Plaintiff is entitled to attorney's fees under § 1132(g)(1). No "special circumstances" justify departing from that normal rule. The court thus turns to the question of what constitutes a reasonable fee award in this case.

### C. The Requested Fees are Reasonable

#### 1. Legal Standard

"To calculate attorney's fees awarded under § 1132(g)(1), district courts utilize a two-step hybrid lodestar/multiplier approach." Welch v. Metro. Life Ins. Co., 480 F. 3d 942, 945 (9th Cir. 2007). "First, the court establishes a lodestar by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." Id. "The party seeking fees bears the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours and the rates claimed." Id. at 945–46 (citing Hensley, 461 U.S. at 433). "In determining the appropriate lodestar amount, the district court may exclude from the fee request any hours that are 'excessive, redundant, or otherwise unnecessary.'" Welch, 480 F. 3d at 946 (quoting Hensley, 461 U.S. at 434). "In addition to setting the number of hours, the court must also determine a reasonable hourly rate, 'considering the experience, skill, and reputation of the

attorney requesting fees.'" Welch, 480 F. 3d at 946 (quoting Chalmers v. City of Los Angeles, 796 F. 2d 1205, 1210 (9th Cir. 1986)). "Second, in rare and exceptional cases, the district court may adjust the lodestar upward or downward using a multiplier based on facts not subsumed in the initial lodestar calculation." Welch, 480 F. 3d at 946 (citing Van Gerwen v. Guarantee Mut. Life Co., 214 F. 3d 1041, 1045 (9th Cir. 2000)).

### 2. Rates

Alan Kassan asks for fees calculated at $700 per hour; Glenn Kantor asks for a rate of $700 per hour; Timothy Rozelle asks for a rate of $400 per hour; and Andrew Kantor asks for a rate of $400 per hour.

The court must determine a reasonable hourly rate based on the "experience, skill, and reputation of the attorney requesting fees." Chalmers, 796 F. 2d at 1210. Setting this rate is inherently difficult. Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). To determine a reasonable hourly rate, the court looks to "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." Chalmers, 796 F. 3d at 1210–11. The relevant community is typically the forum community. Schwarz v. Sec'y of Health & Human Servs., 73 F. 3d 895, 906 (9th Cir. 1995). To inform and assist the Court in making this assessment, "the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." Blum, 465 U.S. at 895 n.11. An attorney's own declaration about the reasonableness of the claimed rate is itself insufficient to meet the plaintiffs' burden. Jordan v. Multnomah Cnty., 815 F. 2d 1258, 1263 (9th Cir. 1987). Declarations by attorneys regarding the prevailing market rate in the community can suffice to establish a reasonable hourly rate. Widrig v. Apfel, 140 F. 3d 1207, 1209 (9th Cir. 1989); accord Rangel, 2016 WL 1449539 at *7 ("[D]eclarations of the prevailing market rate in the relevant community . . . are sufficient to establish the appropriate billing rate for lodestar purposes.") (quoting Davis v. City & Cty. of San Francisco, 976 F. 2d 1536, 1547 (9th Cir. 1992), opinion vacated in part on denial of reh'g, 984 F.2d 345 (9th Cir. 1993) (brackets and internal quotation marks omitted in *Rangel*)); see, e.g., Welch, 480 F. 3d at 947 (considering "declarations from comparable ERISA lawyers attesting" to

market rate). Courts have the discretion to reduce the hourly rate for tasks that less skilled persons could have performed. Ferland v. Conrad Credit Corp., 244 F. 3d 1145, 1148 (9th Cir. 2001).

### 3. The Requested Fees Are Reasonable

The court concludes that the requested rates are reasonable. The declarations that the plaintiff has submitted sufficiently establish that $700 per hour for Mr. Kassan and Mr. Glenn Kantor and $400 per hour for Mr. Rozell and Mr. Andrew Kantor reflect the prevailing rates in the Northern District for comparable work. The Court is moved in this respect especially by the fee awards of other courts, which have given Mr. Glenn Kantor, a senior partner at Kantor and Kantor LLP, a $650 rate in 2015. The $400 rate for Mr. Rozell and Mr. Andrew Kantor, too, comports with prevailing rates for equivalent work in this jurisdiction.

"Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." Vizcaino v. Microsoft Corp., 290 F. 3d 1043, 1050 (9th Cir. 2002).

Here, counsel submit they spent 151.20 hours of attorney time, at a total value of $83,940. ECF No. 58-1 at 10. That figure contains time expended by attorneys, Alan Kassan and Glenn Kantor, billed at $700 per hour, on tasks that could have been performed by a more junior (and less costly) lawyer. For example, Mr. Kassan billed 2.5 hours drafting a Motion for Final Approval of Certification of Settlement Classes and Class Action Settlement, tasks that could have been left to a more junior lawyer such as Mr. Rozell or Mr. Andrew Kantor. Similarly, Mr. Kassan and Mr. Glenn Kantor also conducted legal research and drafted and filed several documents. While the Court would expect Mr. Kassan or Mr. Glenn Kantor to review and edit the Motion before filing, basic research and drafting tasks should have been left to a more junior lawyer. Even if the Court were to reduce the rates for these tasks, however, the lodestar in the case would still reach well above the $70,520 fee requested by Plaintiffs' counsel.

The Court grants attorney fees in the agreed amount of $70,520.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. For the reasons set forth in its February 6, 2017 order, ECF No. 53, the Court confirms

its certification of the class for settlement purposes only.
2. For the reasons set forth in its February 6, 2017 order, ECF No. 53, the Court confirms its appointment of Glenn R. Kantor as Class Counsel.
3. The Court grants final approval of the proposed settlement.
4. The Court grants Plaintiffs' counsel $70,520 in attorneys' fees.

IT IS SO ORDERED.

Dated: August 25, 2017

JON S. TIGAR
United States District Judge